<div style="margin-left:2em">

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,          Case No. 1:18CR131
                        Akron, Ohio
     vs.                Wednesday, September 5, 2018
                        2:40 p.m.
DAVID M. RICHARDS,

       Defendant.


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:   Carol M. Skutnik
                    Office of the U.S. Attorney - Cleveland
                    Carl B. Stokes U.S. Courthouse
                    801 Superior Avenue, West, Suite 400
                    Cleveland, Ohio 44113
                    (216) 622-3600

For the Defendant:   Jeffrey B. Lazarus
                    Office of the Federal Public Defender
                    Skylight Office Tower, Suite 750
                    1660 West Second Street
                    Cleveland, Ohio 44113
                    (216) 522-4856

Court Reporter:      Caroline Mahnke, RMR, CRR, CRC
                    Federal Building & U.S. Courthouse
                    2 South Main Street, Suite 568
                    Akron, Ohio 44308
                    (330) 252-6021


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

</div>

| | |
|---|---|
| 1 | <u>Wednesday, September 5, 2018</u> |
| 2 | THE COURT:  For the record, the Court has before |
| 3 | it today Case Number 1:18CR131.  The case is United States |
| 4 | of America versus David Richards.  We're here today for |
| 5 | sentencing. |
| 6 | Counsel for the government, are you ready to proceed? |
| 7 | MS. SKUTNIK:  Yes, Your Honor.  Carol Skutnik |
| 8 | from the U.S. Attorney's Office on behalf of the United |
| 9 | States of America. |
| 10 | THE COURT:  On behalf of the defendant? |
| 11 | MR. LAZARUS:  Yes, Your Honor.  Jeff Lazarus, |
| 12 | Federal Public Defender's.  We are ready to proceed. |
| 13 | THE COURT:  Thank you. |
| 14 | I have before me -- I want to be certain everybody has |
| 15 | the materials -- the presentence report, investigation |
| 16 | report.  I also have the parties' plea agreement.  I have |
| 17 | the sentencing memorandum submitted by the defendant.  I |
| 18 | also have a sentencing memorandum submitted by the |
| 19 | government. |
| 20 | I also have received, and want to be certain both |
| 21 | sides have it, I have the report from the Department of |
| 22 | Homeland Security, Homeland Security Investigation, Report |
| 23 | of Investigation which incorporates the statements, numerous |
| 24 | statements of the defendant related to his prior history and |
| 25 | conduct, etcetera, that I think are relevant. |

1      Counsel for the government, do you have all these

2  materials?  Do you have all the materials I just referenced?

3      If you were talking, I'll repeat it.

4          MS. SKUTNIK:  No, Your Honor.  I was showing Mr.

5  Lazarus a copy of the report that the Court was referencing

6  to make sure that he understood which report you were

7  referring to.  I do have those materials, Your Honor.

8      I indicated to him that I believe the Court is

9  referring to report number 5 from the Department of Homeland

10  Security as it relates to the statements made to the agent

11  and then the polygraph materials made to Special Agent

12  Fragomeli.

13          THE COURT:  That is correct.

14      Mr. Lazarus, have you seen it?

15          MR. LAZARUS:  Your Honor, I received in

16  discovery -- I just want to make sure I'm looking at the

17  right one.  This is the one that ends in 005 at the bottom?

18          THE COURT:  At the very bottom, yes.  It's

19  CL07QR18CL0008-005.

20          MR. LAZARUS:  And that is a seven-page report?

21          THE COURT:  Yes.  It's dated February 23, 2018.

22          MR. LAZARUS:  Yes.  Then I have it, and I

23  reviewed it.

24          THE COURT:  Additionally, it's my understanding

25  that there is a video recording made of the defendant's

1     interview with the government.

2               MS. SKUTNIK:  That is correct, Your Honor.

3               THE COURT:  How long is it?

4               MS. SKUTNIK:  It is approximately 51 minutes

5     long, Your Honor.

6               THE COURT:  All right.  At this point, I'll hear

7     from counsel.  It's my intention to either have it played

8     here in open court so that we can see it, observe it, or if

9     the parties would like me to review it in camera, I can do

10    that as well.  But I think it's important that I do that and

11    that it be made part of the record in the case.

12              MS. SKUTNIK:  I'll defer to Mr. Lazarus.

13              MR. LAZARUS:  Your Honor, I'm not sure what the

14    purpose of having the Court review that video is.  Some of

15    that substance has already been memorialized into the report

16    and some of it has even been memorialized by the United

17    States' sentencing memorandum.  I think that would be

18    duplicative and not really worth our time.

19         I don't think anything Mr. Richards said during that

20    interview is in contest.  So I'm not sure what the value is

21    for that.  We don't think it's --

22              THE COURT:  Well, the value is I could see the

23    defendant talk in great detail about the circumstances.  I

24    can be sure that the details of the investigation, the

25    synopsis set forth by the agent, is completely accurate,

1   there is no confusion about any of the statements that he

2   made.

3       Wouldn't that be beneficial?

4           MR. LAZARUS:  Your Honor, I'm letting the Court

5   know that myself and my client don't have any argument with

6   the report.  So we believe the report fairly summarizes it

7   and is accurate.  We don't think it needs to be reviewed.

8           THE COURT:  Do you have any objection to me

9   reviewing it as part of my consideration of the sentence in

10  the case?

11          MR. LAZARUS:  I just think it's duplicative.

12          THE COURT:  It may be.  I guess that's not my

13  question.  Do you have an objection to me watching or

14  viewing the defendant making his statement so that I have

15  that information directly from his mouth, so to speak,

16  rather than relying upon the recitation set forth by the

17  agent?

18      Isn't it more -- wouldn't it certainly be more

19  beneficial to see his testimony in and of itself -- I

20  shouldn't say testimony.  His statement.

21      What's the basis for your objection?

22          MR. LAZARUS:  I don't think it needs to be done

23  in open court.

24          THE COURT:  Why is that?

25          MR. LAZARUS:  Your Honor, we sealed the briefs

1    because there is some very sensitive information.  Obviously

2    there is sensitive information portrayed in that report.  I

3    don't think it benefits all of us to witness the entire 51

4    minutes of this video.

5            THE COURT:  Well, isn't it probative of the

6    nature and circumstances of the offense and isn't it

7    probative of the history and characteristics of the

8    defendant so that I can understand and you can all

9    understand, we can all understand what it is we're trying to

10    decide here?

11        A large part of this case is the reasons for the

12    Court's sentence:  Just punishment, adequate deterrence,

13    protect the public, reflect the seriousness of the offense.

14        And the defendant's history and characteristics, his

15    background, his prior experience, his sexual conduct, his

16    conduct involving other minors allegedly, all of that, isn't

17    that all something that's relevant here?

18            MR. LAZARUS:  It's all relevant, and it's all

19    summarized in the report by the agent.  So I think all the

20    relevant information is already memorialized and could be

21    read by the Court and read through our various sentencing

22    memoranda and the presentence report.

23            THE COURT:  Well, counsel, does the government

24    have a position?

25            MS. SKUTNIK:  Well, Your Honor, as I noted in my

1    sentencing memorandum, I did supply this material to

2    both -- in both discovery to counsel and to the probation

3    department.

4         However, the Court would note that in the summary of

5    the facts of this case, it does not include a summary of any

6    of the defendant's statements nor his admissions to prior

7    sexual conduct as is included in the statements that I

8    detailed in my memorandum which is why I put, for example,

9    the polygraph statement verbatim in my memorandum.

10        But as the Court knows, the memorandum does not follow

11   the defendant to the institution, and the fact that I have

12   cited it in my memorandum does not make it part of the

13   record.

14        And so I do think it would be appropriate and relevant

15   to include the statements of the defendant either as

16   summarized in this report done by the Department of Homeland

17   Security as well as the written statement signed by Mr.

18   Richards as part of the polygraph examination.  I believe

19   those should be made part of the record for purposes of this

20   sentencing hearing.

21        And if the Court wishes to hear the video, I have the

22   video prepared, however the Court wishes to proceed on the

23   video.  I do believe that Special Agent Guyton did do a very

24   thorough report as it related to his interview, but I have

25   also reviewed the video of the interview as well.

8

1        So however the Court would like to proceed on the

2    video, but I do believe that his statements should

3    definitely be part of the record as they have not been

4    included in the PSR.

5             THE COURT:  Well, the only thing that concerns me

6    about -- the only hesitation I have in playing the video is

7    because it does reference the name of the defendant's

8    daughter.  And, again, she was a victim in his earlier gross

9    sexual imposition case.  So I believe that's my only

10   hesitation.

11       Beyond that, I think -- again, I think it's beneficial

12   to all of us to see Mr. Richards and how he comports himself

13   and how he addresses the agents, all of the -- again, that's

14   why we have, in some respects it's almost analogous to the

15   Sixth Amendment right to cross-examination so that we can

16   all see and hear.  And counsel can obviously then, if they

17   wish, comment on what they see.  We have the report.

18       And counsel for the defendant, if you're going to

19   stipulate and agree that all the representations and

20   information contained in the report is complete and

21   accurate, and that is the report I've just referenced, if

22   you want to make that stipulation and allow it to be

23   included as part of the record in the case, then I will

24   consider that in lieu of playing the video.

25            (Counsel confers with defendant.)

1              MR. LAZARUS:  Your Honor, I have spoken with my

2     client.  It's his desire to enter a stipulation to the

3     report as written in lieu of playing the recording.

4              THE COURT:  All right.  Counsel, are you willing

5     to accept the stipulation?

6              MS. SKUTNIK:  I am, Your Honor.

7              THE COURT:  We'll note the stipulation.  And I'll

8     make certain, I want to be sure that this report is part of

9     the record.  It's something that's important for the Court

10    in considering a sentence in the matter.

11         So let's make sure that -- we'll make sure that it's

12    part of the record.  And, again, I intend on relying on it

13    and using it in some respects as it relates to sentencing.

14         With regard to -- just so it's clear, does anyone need

15    any additional time to review that report before we go

16    further?  Anyone have any further desire, need?

17         I know it's been produced in discovery.  Any

18    additional time needed to review that report of

19    investigation?

20         Counsel for the government?

21              MS. SKUTNIK:  I'm prepared, Your Honor.

22              THE COURT:  Counsel for the defendant?

23              MS. SKUTNIK:  I have reviewed it.

24              THE COURT:  Thank you.

25         Counsel for the defendant.

1      MR. LAZARUS:  We're prepared.

2      THE COURT:  All right.  Thank you.

3      Mr. Richards, did you go over the presentence report

4   that was prepared to assist me in deciding your sentence in

5   the matter?

6      THE DEFENDANT:  Yes, Your Honor.

7      THE COURT:  Counsel, did you review the report

8   with your client?

9      MR. LAZARUS:  I did, Your Honor.

10     THE COURT:  Thank you.

11     The report indicates there is an objection by the

12   defendant.  The defendant objects to multiple paragraphs,

13   paragraphs 34 to 38 and paragraph 45 which refer to other

14   criminal conduct.

15     "Mr. Richards objects to these four paragraphs -- "

16   and I'll read the objection so it's clear for the record.

17     "Mr. Richards objects to these four paragraphs and the

18   unfounded allegations they raise.  For obvious reasons, Mr.

19   Richards and his ex-wife have a very tense relationship.

20   Ms. Walker is extremely angry at Mr. Richards for his

21   conduct in the case involving their daughter.  Ms. Walker

22   has a number of mental health issues of her own as well.

23   The allegations she raises are totally unfounded, completely

24   untrue, and should not be admitted into this report.  No

25   police reports were ever made regarding any of these

1    allegations."

2         As to paragraph 38, the objection is, "For the same

3    reasons in the preceding objection, the paragraph should be

4    deleted.  Ms. Walker's story is untrue, and Mr. Richards was

5    never arrested or charged in connection with this.

6    Therefore, it is not an 'other arrest.'"

7         And paragraph 45, with regard to Ashley, that is the

8    child victim in the gross sexual imposition case.  The

9    defendant argues, "She is not a victim in this case, and her

10   desires for sentencing should not be included in the

11   presentence report."

12        The probation officer's response is, "18 United States

13   Code 3661 instructs that no limitation shall be placed on

14   the information concerning the background, character and

15   conduct of a person convicted of an offense which a court of

16   the United States may receive and consider for the purpose

17   of imposing an appropriate sentence.  As such, the probation

18   officer maintains that the contested information is

19   appropriately included for the Court to review."

20        It says, "The probation officer did not report any of

21   the information in the contested paragraphs as fact but

22   rather as additional inappropriate sexual behavior as

23   recorded by others.  Regardless of whether the contested

24   paragraphs involve aggravated or mitigating circumstances,

25   the probation officer maintains that the information is

1     permitted to be in the report.  Additionally, this report is

2     background information.  It may be beneficial to the Bureau

3     of Prisons and/or the U.S. probation officer supervising Mr.

4     Richards during his term of supervised release.  Moreover,

5     there is no requirement binding the Court to consider these

6     contested paragraphs when imposing a fair sentence."

7          Having heard the objection, I did confer with both

8     counsel and suggest to counsel for the government that in

9     light of the objection, if Ms. Walker is desirous of coming

10    forward and testifying, that the Court would hear from her

11    if the government so desired.

12          Counsel for the government, what's your position at

13    this time regarding the objection?

14          MS. SKUTNIK:  Your Honor, following our

15    conversation, or I should say our hearing by telephone, I

16    did contact Ms. Walker.  She is present here in the

17    courtroom and is prepared to speak before this Court.

18          I've also had an opportunity to speak with Mr. Lazarus

19    prior to the commencement of our hearing.  And we discussed

20    whether or not it would be necessary for Ms. Walker to take

21    the stand to repeat the matters that she has reported to the

22    probation department and that are included in the PSR.

23          I believe the parties both agree -- and Mr. Lazarus

24    can certainly correct me if I'm wrong.  But the parties

25    agree that the statements contained in the report made by

1     Ms. Walker are those of Ms. Walker.  Those are her

2     allegations of what was told to her and her recollections,

3     or representation of her recollections, as it related to Mr.

4     Richards, and that there are times when Mr. Richards'

5     statements differ from Ms. Walker, however, there are a

6     number of items that are discussed that are corroborated in

7     part by the statements of Mr. Richards.

8          For example, the incident at the mall.  There is a

9     different version, but there is a reporting of that

10    material.

11         So I say all that because I believe that the parties

12    are recommending to this Court that it is not necessary for

13    Ms. Walker to testify here before this Court at sentencing,

14    but that her statements or her allegations may be considered

15    by this Court for whatever weight the Court believes is

16    appropriate to give the material, of course recognizing that

17    Mr. Richards has not admitted or commented on some of the

18    matters in there or may disagree with some of the

19    representations.  And I believe they are listed in the

20    report as "alleged."  That is the word that is included in

21    there.

22         And frankly, even if she does testify, which she is

23    willing to do today, it would not resolve the matter of

24    whether or not those are in fact truthful because, frankly,

25    those are her statements.  She alleges them to be truthful.

1    And Mr. Richards objects or does not agree with all of the

2    statements.  And he has different allegations.

3         So I think that is our position.  Mr. Lazarus can

4    correct me if I'm wrong.

5              THE COURT:  Wouldn't that give us an opportunity

6    to, with all due respect, to judge, or consider, I should

7    say, is a better term, Ms. Walker's credibility?

8         She can give her testimony if she would like, and then

9    the defendant can test that testimony if he likes through

10   cross-examination.  Otherwise, I have the statements that

11   she gave to probation officers which are in essence hearsay

12   when she's here and present.

13        So I don't want it later on to be an issue on appeal

14   that, oh, the Judge considered these other -- this other

15   offense conduct but I didn't have a chance to challenge it

16   or to determine it's veracity, or what have you, because we

17   have a witness.  We have the person who has made the

18   statements.  And she is present.

19             MS. SKUTNIK:  Your Honor, I don't want to speak

20   for defense counsel.  Perhaps he can make a representation

21   as to how he would like to proceed.

22             THE COURT:  I mean, I just find it difficult to

23   say, Judge, we object to this being included.  It's not

24   true.  And then the witness comes forward and says, well,

25   I'm here.  I will be glad to tell you exactly what I know,

1    and then decline to examine her and to test whether or not

2    she's being truthful.

3            MR. LAZARUS:  Your Honor, as far as her

4    truthfulness, I guess as far as the credibility that these

5    allegations were made to her, we don't really contest that,

6    that she became aware of Mr. Richards -- of allegations of

7    sexual misconduct by Mr. Richards.  She received those

8    allegations, and we don't dispute that her receiving those

9    allegations are credible.

10           But the question that still remains is whether the

11   actual occurrences happened.

12           Now, if we interpret the presentence report as

13   allegations and not actual fact, then we're satisfied.  We

14   understand that the allegations were made.

15           And specifically as to paragraphs 36 and 37, upon

16   further talking with my client, it's our understanding that

17   these actual paragraphs reference counts of his conviction

18   from his Cuyahoga County case.  So we actually don't even

19   contest the truth of that because he did plead guilty to

20   those.

21           As to paragraph 38, the incident that happened in the

22   mall in Virginia, as Ms. Skutnik indicates in her sentencing

23   memorandum on page 9, Mr. Richards actually made admissions

24   that somewhat are consistent with what Ms. Walker's

25   recollecting.  There are some differences in the finer

1    points, but the conduct occurred nonetheless.

2         So we really don't take issue with most of the

3    substance of it.  We just want the Court to know that these

4    are simply allegations and not actual facts.

5         And the Court can obviously rely on them in

6    considering the 3553(a) factors.  But our initial objection

7    was to the form in which they were -- in which they were

8    represented in the presentence report.

9         But based on Ms. Skutnik's representations to this

10   Court, I believe that we concur with that that's how they're

11   properly framed.

12              THE COURT:  Let's read into the record what is at

13   issue here, what you're objecting to.

14         According to the report, paragraph 34, "The following

15   alleged information was obtained through independent

16   interviews with the defendant's ex-wife, Laura Walker, and

17   his daughter, Ashley."  I'll defer reading her last name

18   into the record.

19         "In 2002," paragraph 35, "while attending his mother's

20   funeral, Richards allegedly attempted to put his hand up his

21   four-year-old niece's dress.  The information was told to

22   Ashley by her aunt, the child's mother, following the

23   defendant's 2006 conviction for gross sexual imposition

24   against Ashley."

25         Paragraph 36, "In December of 2004, while at Walker's

1     mother's funeral," apparently the same event, "Richards

2     allegedly groped Walker's 16-year-old cousin.  Thereafter, a

3     relative allegedly punched Richards in the face."

4             Paragraph 37, "In addition to all of the above, Laura

5     Walker advised that the defendant groped four of her minor

6     cousins at various family functions, graduation and holiday

7     events, for years prior to his 2005 arrest; however, none of

8     the children reported the incidents until after his arrest."

9             And then paragraph 38, "Although no record could be

10    located to verify this information, Laura Walker advised the

11    defendant was arrested for masturbating in a mall in

12    Virginia in November of 1990.  At the time they lived in

13    Virginia for Richards' career in the U.S. Navy.  Walker

14    stated that the defendant was observed masturbating near the

15    Santa section and exposed his penis to a woman working in a

16    jewelry store on Black Friday.  Walker advised that after a

17    law enforcement officer called the residence to tell

18    Richards of the warrant for his arrest, Richards violently

19    raped --" and so forth.  "According to Walker, witnesses

20    failed to report to his court hearing, and Richards was

21    acquitted of this charge in 1992."

22            So that is what Ms. Walker shared with the probation

23    officer.

24            Ms. Skutnik, have you talked to her?  Does she have

25    any other information to share that might be of benefit for

1    either side in the case?

2                    MS. SKUTNIK:  Your Honor, I did not interview Ms.

3    Walker on today's date.  I have communicated with her in the

4    past by -- I believe by one telephone call and also several

5    e-mails back and forth.

6         And her information generally focuses on the events

7    that she has delivered to the probation department.

8                    THE COURT:  All right.  Anything else?

9                    MS. SKUTNIK:  Not on my behalf, Your Honor.

10                   THE COURT:  Counsel for defendant?

11                   MR. LAZARUS:  No, Your Honor.

12                   THE COURT:  So in essence you're indicating I can

13   rely on the information set forth in the report at

14   paragraphs 34, 35, 36, 37, and 38 as allegations made by the

15   defendant's ex-wife?

16                   MR. LAZARUS:  Your Honor, with that understanding

17   then, we would, I guess, defer to the Court.

18                   THE COURT:  All right.  Thank you.

19        Anything else before we turn to the advisory guideline

20   calculation?

21                   MS. SKUTNIK:  Nothing further from the United

22   States, Your Honor.

23                   MR. LAZARUS:  As far as objections to the

24   presentence report?  Is that what the Court's referring to?

25                   THE COURT:  Yes.

1          MR. LAZARUS:  No, Your Honor.

2          THE COURT:  At this time the objections will be

3     overruled for the reasons I've just stated.  The facts as

4     described have been set forth in the report.  They're set

5     forth as allegations based upon the representations of

6     counsel that the Court can consider them and consider them

7     as such.

8          I'll, again, overrule the objection, and they'll be

9     set forth for whatever use that may be made of them.  Again,

10    the focus being on potentially corroboration by other means,

11    by defendant's statement, etcetera.

12         Turning to the guideline calculation, there is a

13    guideline calculation recommendation set forth at paragraph

14    15 of the parties' presentence investigation

15    report -- excuse me, the parties' plea agreement.  I stand

16    corrected.

17         In terms of the guideline calculation in the PSI, that

18    also -- a separate calculation has been made.  And that

19    calculation is set forth in the report.

20         And it begins at page -- just a moment.  We have quite

21    an extensive report.  The calculation in the report, or in

22    the parties' plea agreement, calls for a base offense level

23    of 22.

24         A prepubescent minor or minor under the age of 12, the

25    advisory guideline enhancement of two levels.

1       There is a two-level recommended guideline computation
2   for knowing distribution of two levels.
3       And then there is a sadistic or masochistic material
4   enhancement of four levels.
5       There is the use of the computer of two levels.
6       And the 600 or more images is a five-level
7   enhancement.
8       And then there is an enhancement -- or a subtotal
9   before acceptance of responsibility of 37.
10      That is what is recommended by the parties.
11      The probation department has included an additional
12  enhancement in this matter.  And that is four levels because
13  of the pattern of conduct, as I understand the additional
14  four levels that the probation staff has recommended.
15      Counsel for the government, am I correct, that is the
16  position of the probation staff?
17          MS. SKUTNIK:  Your Honor, according to the plea
18  agreement, the parties reserved the right to argue over
19  whether or not the pattern of activity enhancement applied.
20  The government does advocate and believe that the pattern of
21  activity enhancement applies, and the defendant reserved the
22  right to object to that guideline enhancement.
23      And the Court is correct that the report does, in
24  paragraph 21, apply -- or I'm sorry.  I quoted the wrong
25  one.  In paragraph 19, the probation department does apply a

1    five-level enhancement for pattern of activity involving the

2    sexual abuse or exploitation of a minor.

3              THE COURT:  Under 2G2.2(b)(5).

4         Counsel for the defendant, why do you object or why do

5    you believe it does not apply?

6              MR. LAZARUS:  Your Honor, we don't object.  While

7    we reserved the right in our plea, upon review of the

8    presentence report, we do not have an objection to the

9    enhancement.

10        The Court did reference that it was four levels.  It's

11   actually five levels under subsection (b)(5).

12             THE COURT:  All right.

13             MR. LAZARUS:  So we do not have an objection to

14   that enhancement.

15             THE COURT:  I'll stand corrected.  Then the

16   offense level becomes a 39.

17        And the criminal history category is a II.

18        And subject to -- does the government seek a downward

19   adjustment for acceptance of responsibility?

20             MS. SKUTNIK:  The government would make that

21   motion, Your Honor.

22             THE COURT:  So from the 39 there would be a

23   three-level downward adjustment.  And therefore the total

24   offense level becomes a 36 in this case.

25        At offense level 36, criminal history category II, the

1    advisory guideline range is 210 to 262 months.

2           Counsel for the government, do you have any objection

3    to the calculation?

4           MS. SKUTNIK:  Your Honor, I believe that the

5    defendant's adjusted offense level is a 42 and then a 39

6    after acceptance.

7           THE COURT:  I'm sorry.  I do stand corrected.

8    You're right.  I was looking at the other calculation.

9           So, therefore, the 39 would apply.

10          Counsel for the defendant, do you have any objection

11   to the guideline calculation, please, other than your

12   arguments for variance, etcetera?

13          MR. LAZARUS:  We just want to make sure that the

14   Court is correct.  At 39/II, the range under the guidelines

15   table is 239 to 265 months, but because of the statutory

16   maximum it's capped at 240 months which would be the

17   guideline range.  We concur with that.

18          THE COURT:  I agree.  Thank you, counsel.

19          That would be the guideline range, again, subject to

20   arguments for variance or departure, although departures are

21   prohibited under the Protect Act.  So we will deal with, of

22   course, the various arguments for a variance.

23          Counsel for the defendant, I have reviewed your

24   extensive briefing.

25          What if any additional argument would you like to make

1    as it relates to this case, please?

2                MR. LAZARUS:  Thank you, Your Honor.

3        Your Honor, we're asking this Court to consider a

4    variance below the sentencing guidelines range, below the

5    statutory maximum, as Mr. Richards is not the worst of the

6    worst offenders who would deserve a statutory maximum

7    sentence.

8        I want the Court to know that from the moment that

9    this case began, from the moment that I began representing

10   Mr. Richards, he has admitted to his offense, that he has

11   expressed significant remorse.  He recognizes the harm that

12   he's caused his family in his actions in this case and in

13   his actions in the past, and he recognizes the harm that his

14   offense has caused to the victims.  And he has expressed

15   great sorrow and great remorse for that.

16       He also wants the Court to know that he knows that he

17   has a problem.  He knows that he has severe mental health

18   issues, and his attraction to these types of images and

19   material is something that obviously he should not be doing.

20   But he wants the Court to know that he has a problem, that

21   he wants treatment, and that he knows that he will be

22   serving a significant sentence in the Bureau of Prisons to

23   get him the help he needs and get him the treatment that he

24   needs.

25       But we want the Court to consider several mitigating

1    factors.  And before I talk about the specific factors that

2    apply to Mr. Richards, I want to talk just briefly about the

3    guidelines generally.

4         As we discussed in our sentencing memorandum, we

5    believe that the sentencing guideline range, while factually

6    applicable, overly inflates his sentencing guidelines range.

7         There is certain -- obviously the Court has gone

8    through the litany of sentencing enhancements that apply in

9    this case.  And Mr. Richards gets, you know, almost every

10   enhancement there is.  And these take his offense level from

11   a base offense level 22 to a total offense level of 42

12   before acceptance of responsibility.

13        Some of these enhancements are applied in virtually

14   every case involving these types of images.  And we believe

15   that when an enhancement is imposed in 95 percent of the

16   cases or more, it doesn't actually qualify as an

17   enhancement.

18        We're not saying it doesn't factually apply.  And

19   we're not saying that the whole 2G2.2 should be thrown out

20   and scrapped.  We're just saying the Court can consider the

21   fact when these enhancements are piled up in each and every

22   single case, that they result in a sentencing guidelines

23   range that is greater than necessary and warrants some

24   consideration of a variance.

25        And the Court can do that, can disagree with the

1    policy under Supreme Court case law that's cited in our

2    brief.

3         But I want to focus specifically on three

4    enhancements.

5         Use of a computer.  So Mr. Richards gets two levels

6    because this offense is committed with a computer.

7         Now, having practiced in Federal Court now for ten

8    years, I have not seen a case that doesn't involve this

9    enhancement.  This enhancement comes in in each and every

10   one of these cases.

11        So to say that this offense is enhanced because of the

12   use of a computer is somewhat duplicitous.  It's double

13   counting.  And it imposes a sentence that is a base offense

14   level -- or a total offense level that is higher than we

15   need.

16             THE COURT:  Hasn't the Circuit rejected that

17   argument directly, that the imposition of 2G2 -- or I'm

18   sorry, the imposition of the use of a computer is not double

19   counting?  Isn't there a published opinion on that point?

20             MR. LAZARUS:  They have not said that as a matter

21   of law it is automatically double counting, but the Court

22   does have discretion to consider that.

23        And several of your colleagues have rejected that

24   enhancement.  I know for a fact that Judge Polster and Judge

25   Zouhary routinely give a two-level variance because of these

1    issues, because they believe it is double counting.

2           So the Court has discretion to consider that under the

3    3553(a) factors.  We're not saying as a matter of law it

4    needs to be scrapped or thrown out.

5           THE COURT:  No.  That is not my question.  Isn't

6    there a Sixth Circuit case -- I think I have one on my desk

7    as I prepared -- that says it is not double counting to

8    apply the use of the computer enhancement?

9           MR. LAZARUS:  And we're not --

10          THE COURT:  Isn't that the state of the law

11   currently?

12          MR. LAZARUS:  We're not saying it is

13   automatically double counting.  But we're just saying the

14   Court can consider the fact that this enhancement keeps

15   coming up time and time again in every case in considering

16   what is the appropriate guideline range and what should be

17   the appropriate sentence.

18          So the Court is correct that it is not automatically

19   double counting.  But it is something the Court can consider

20   in a wide range of other factors under 3553(a).

21          THE COURT:  All right.  Thank you.

22          MR. LAZARUS:  And the same is true of the victim

23   under 12.  I'm not going to make the same argument, but the

24   same reasoning does apply.

25          As far as the number of images, we want the Court to

1    know that in a case --

2            THE COURT:  Why does that apply, because isn't it

3    certainly an aggravating circumstance if, if -- these cases

4    are so difficult, but if an individual, like this defendant,

5    is attracted to individuals as young as six years old, six

6    to twelve, children, young children, isn't that an

7    aggravating circumstance?

8        Isn't that something that I should be considering

9    rather than someone who is attracted to 15, 16, 17?  All

10   illegal.  All inappropriate.  But certainly on the scale of

11   these things -- and it's hard to, again, place them on some

12   scale.

13       I have a hard time with an argument that I shouldn't

14   consider it aggravating that a person likes to watch young

15   children being raped at the age of six or seven or doesn't

16   get some sort of gratification from that, that that's not an

17   aggravating circumstance, that that's not a circumstance

18   that should give me cause and concern and increase the

19   guideline range.

20           MR. LAZARUS:  Well, Your Honor is bringing up two

21   separate enhancements at once.  One is the victim under 12,

22   and the second is the sadistic or masochistic.

23       A child being raped would incorporate both of those

24   enhancements and give a six-level.  We're talking

25   specifically about the child under 12.  And as cited in our

1    brief, that enhancement is imposed in over 95 percent of the

2    circumstances.

3         So while philosophically --

4              THE COURT:  Which enhancement?  One or both?

5              MR. LAZARUS:  The victim under 12.  The sadistic

6    masochistic has less frequency.

7         So focusing specifically on the victim under 12, that

8    enhancement is given in 95 percent or almost every case.

9         So while we can talk about the philosophy, obviously

10   that is an aggravating factor.  When that aggravating factor

11   is imposed in virtually every case, we believe it unjustly

12   and irrationally aggravates his sentencing range.

13             THE COURT:  Well, I haven't heard from the

14   government, but I guess I'll tell you out of hand, having

15   presided over some of these cases -- and they are all

16   difficult; they're all very difficult -- as a policy matter

17   I reject that argument.

18        I think it's clearly appropriate -- and the Commission

19   may have considered it.  It's clearly appropriate that there

20   be some sort of enhancement under the guidelines for

21   children under 12.  I reject out of hand any policy argument

22   that the mere fact -- unfortunately, tragically, so many of

23   the victims are children under 12, that as a policy matter I

24   should consider that and not impose that enhancement, or in

25   some way, shape, or form modifying the sentence.

1          I think to the contrary, as the guidelines counsel, I

2     think if the child or victim is under 12, then I think there

3     should be some sort of enhancement.  As a policy matter, I

4     would think there should be a greater enhancement if the

5     child is under six.

6                    MR. LAZARUS:  Your Honor --

7                    THE COURT:  Strictly as a policy matter.

8          I mean, I'm just being candid with you.  That argument

9     doesn't hold a whole lot of water, particularly when you're

10    talking about children, little victims who are children.

11         So next argument is to sadistic/masochistic.  You want

12    to argue that that --

13                   MR. LAZARUS:  We're not arguing that.

14                   THE COURT:  I would hope not.

15                   MR. LAZARUS:  But, Your Honor, there is a

16    difference between the abstract of how bad these images are,

17    how these cases are actually being prosecuted, and when the

18    enhancements are coming in.

19         It's our position that when an enhancement is imposed

20    every time, in every single case, that it's inherent in the

21    offense and should not be considered an aggravating factor.

22                   THE COURT:  Well, that's just related to the

23    guidelines.  That's just a guideline calculation.  That has

24    nothing to do with -- once again, we can go beyond the

25    guidelines, and we look at the facts and circumstances, the

1    nature and circumstances of the offense, the history and

2    characteristics of the defendant.  We look at a wide range

3    of other information.

4         The guidelines are the benchmark.  They're the

5    starting point.  But to argue that, again, that the

6    guidelines are in some way, shape, or form either misguided

7    or I shouldn't follow them, you know, philosophically, I

8    disagree.  Actually I disagree with my colleagues.

9         I think philosophically the guidelines are appropriate

10   in these kind of cases, that we are far too often focused on

11   who?  The defendant.  We're not thinking about the victims.

12   And that's why when you argue that, again, the enhancement

13   is applied across the board for children under 12, I say to

14   myself, wait a minute.  What about the victims?  What about

15   the victims?  Let's talk about them.

16              MR. LAZARUS:  Yes, Your Honor.  And Mr. Richards

17   has great remorse for the harm that he has caused these

18   victims.  And we understand that, and he knows that he is

19   going to get a significant sentence because of the harm that

20   he caused these victims.

21        But we're trying to figure out what is an appropriate

22   sentence for this case.

23              THE COURT:  Again, let me help you out, perhaps.

24        The focus here should be -- the challenge that you

25   have in this case is not the guidelines.  The challenge is

1     not the guidelines.  If I use the guideline range, a lower

2     guideline range, the challenge is not the guidelines.

3         The challenge is the history and characteristics of

4     the defendant, his prior conviction for GSI, his admitted,

5     if you read his statements to law enforcement, his admitted

6     pattern of attraction to young children, six to twelve, I

7     think, if I recall his statement correctly.

8         And the pattern that he has had of being sexually

9     attracted to children, including his own daughter's

10    classmates, those are the kinds of things that make it

11    difficult.

12        When you have a defendant who is not some -- and

13    again, I'm not minimizing looking at pictures.  But here we

14    have what we call, in the words of the Commission, a

15    hands-on -- the commission's report.  We have a hands-on

16    offender, right?

17                MR. LAZARUS:  That's correct.

18                THE COURT:  So that makes this case entirely

19    different than the kinds of cases I think you're trying to

20    compare and contrast it with.  All the disparities that you

21    talk about in terms of the guidelines don't carry a lot of

22    weight when you think about -- again, you can distinguish

23    all that from defendants who are -- you look at the nature

24    of the pictures they have.  We can talk about that.  You

25    look at his involvement with others in the community.  We

1    know about that.  We have the chats, right?  He's chatting

2    with other like-minded individuals.  This investigation

3    began in New Zealand, right?

4                    MR. LAZARUS:  That's right.

5                    THE COURT:  So we have that.

6         And then we also have the prior history of hands-on

7    offending which puts this defendant in -- again, most

8    challenging for you, this puts this defendant right in the

9    crosshairs of what the Commission has said when you talk

10   about the guidelines, at least in my mind, the more

11   appropriate in many ways, at least equally important

12   considerations.

13        So you can argue the guidelines back and forth with

14   me, back and forth.  And I want to be fair.  But the

15   guidelines really aren't what drives the sentence in this

16   case.  No way, shape, or form.

17        What drives this case is the history and

18   characteristics of the defendant and the nature and

19   circumstances of this offense.  We know what this is about.

20   But his prior history is what's really most difficult.

21        And then we have the need for the sentence.  What do

22   we do with someone who has, over many years, involved

23   himself in -- is sexually attracted to children, admittedly,

24   and who has acted out on that behavior.

25                    MR. LAZARUS:  That's correct, Your Honor.  And

1    Your Honor, he is looking at a significant sentence, and the

2    guidelines do give him a significant penalty for that with

3    the five levels for the pattern activity and the increase in

4    his criminal history score.

5         So part of his history is taken into account in the

6    guidelines because of the offenses he has in the past.

7         But we want the Court to know that the prior hands-on

8    offenses that we're all talking about are 15, 20, 30 years

9    old.  That if we look at this offense that Mr. Richards

10   committed, it is a fairly typical child pornography offense.

11   We're talking about Mr. Richards being involved in posting

12   links online.  And the amount of images that were found on

13   his computer is relatively small compared to most other

14   child pornography offenses.  We're talking about less than

15   20 videos and several hundred images.

16        So he gets five levels under the guidelines for that,

17   whereas if he had 10,000 or 100,000 or a million images, he

18   would get the same guidelines enhancement.

19        So we just want the Court to understand the facts and

20   circumstances of this offense.

21        But more importantly as to this offense, Mr. Richards

22   admitted his conduct.  We want the Court to consider the

23   fact that from the moment that law enforcement came to his

24   door and started asking him questions, he admitted his

25   involvement.  He's never denied that he was involved in

1    these types of images.  He has never denied his conduct.  He

2    admitted to law enforcement.  He gave a full confession.  He

3    submitted to a polygraph examination.

4         He then came to this Court and pled guilty and has

5    accepted responsibility, allocuted -- he's going to allocute

6    later before this Court.

7         But we also want the Court to consider his history and

8    circumstances because obviously there are a lot of negative

9    things in there.  But it's not all negative.  And we want

10   the Court to consider some of the positive things that have

11   gone on in his life and some of the things that happened in

12   his childhood that are not an excuse for his behavior but

13   help to paint a clearer picture of how someone could become

14   this damaged and could have these types of problems based on

15   the things that happened to him and the traumas that

16   happened to him as a child.

17        He was molested himself.  He was abused.  I'm not

18   going to go through all the specifics because the Court has

19   read our sentencing memorandum.  But he was taken advantage

20   of by older men, by older boys in the neighborhood.  He was

21   treated unfairly.  He was abused.  He was subjected to the

22   same abuse that some of the victims of his current offense

23   have been subjected to.

24        And Mr. Richards went through and graduated high

25   school.  And shortly after high school he joined the

1    military.  And he spent over 20 years in the United States

2    Navy.  He served this country.

3         And we want the Court to understand that he has done

4    some good things in his life.  He takes much pride in

5    serving his country and being an active member in the United

6    States Navy which he was able to demonstrate his devotion to

7    this country.

8         His offense doesn't negate that.  His offense doesn't

9    make it that it didn't happen.  We just want the Court to

10   understand that he did spend a significant period of his

11   adult life devoted to our armed services.

12        And then, once that was completed, he then went into

13   the work force.  He has a significant work history which is

14   detailed in our sentencing memorandum.  He worked a number

15   of jobs, some of which for many years at a time.  He worked

16   for our own federal probation office for seven years in

17   human resources.  He was able to get a job in the Veteran's

18   Administration.

19        He's really, other than the time that he was

20   incarcerated, he was either employed or in the Navy for his

21   entire adult life.  And we believe that that is significant

22   and takes him to a point where he is different from many of

23   the other defendants that come before this Court for similar

24   offenses.

25        David knows that his offense is heinous.  He knows

1    what he has done to his family and to his victims.  And he

2    understands that it is reprehensible and something he has

3    great shame for.  He has never denied that.

4          But in focussing on this offense, we have a relatively

5    small number of images that we're dealing with here.  We --

6                THE COURT:  When you say "relatively small," is

7    it not 600, but when you count the videos, aren't we at

8    1,600 or plus?

9                MR. LAZARUS:  That's correct.

10               THE COURT:  Weren't there a substantial amount

11   being -- not that we can hold that against him, but I think

12   the evidence is that he would delete -- he would receive and

13   then delete a great deal.  Is that not?

14               MR. LAZARUS:  Well, the ones that were deleted

15   were recovered by forensic review by law enforcement.  So

16   those are taken into account in the total number.

17         What we're talking about, I believe, the note is 18

18   videos which ends up being over 1,000 images just based on

19   the calculation.  So that is taken into account.  But in

20   comparison to the other similar child pornography cases,

21   this is a relatively small number.  Most of the cases that

22   come before these courts dealing with these child

23   pornography offenses are talking about hundreds or thousands

24   of videos and thousands upon thousands of pictures.

25               So we want the Court to consider this offense and the

1    conduct we have here which is relatively small compared to

2    the vast number of cases.  And we believe that that's

3    something the Court should consider in determining

4    sentencing disparities and the appropriate sentence.

5         We also want the Court to consider David's mental

6    health.  David has a long history of mental health issues.

7    He was receiving treatment for them.

8         He suffered from post traumatic stress disorder and

9    anxiety.  He was receiving services from the VA for over ten

10   years.  He was trying to deal with these issues.

11             THE COURT:  What issues?

12             MR. LAZARUS:  I'm sorry?

13             THE COURT:  What issues was he trying to deal

14   with?

15             MR. LAZARUS:  He was trying to deal with the

16   issues that were related to his attraction to children.

17             THE COURT:  What evidence is there of that?  Do

18   you have any statement from the VA?

19        I'm just -- I'm curious.  Do we have a doctor or

20   someone who has rendered a report indicating that he was

21   receiving counseling?

22        I understood that he was receiving some counseling for

23   depression or some other type of illness.  I didn't see

24   anything to reflect the fact that he was receiving

25   counseling related to his attraction to children.

1           MR. LAZARUS:  I reviewed about 500 pages of

2      Veteran's Administration records.  There is no specific

3      reference to him being attracted to children in those

4      records.  But -- and I have tried to contact the doctor, but

5      I was not able to contact her.

6           Mr. Richards does tell me that this was something he

7      disclosed, that he did have this attraction.

8           THE COURT:  Is there anything in his records?

9      I'm sorry.  You told me there was not.

10          MR. LAZARUS:  There is not.

11          THE COURT:  So there is nothing in the record

12     saying, "discussed with Mr. Richards" or "discussed with

13     David today his attraction to children"?  That was not part

14     of the psychiatric record?

15          MR. LAZARUS:  The specific issues that he

16     discussed other than the actual diagnosis were not

17     discussed.  So they diagnosed him as having depression or

18     anxiety and post traumatic stress disorder, but there was no

19     reference to the specific topics that were discussed.

20          But we wouldn't expect to see that in these Veteran's

21     Administration records.

22          THE COURT:  Why would you not?  If I'm someone

23     who has this attraction -- he was very forthright with the

24     agent about his ongoing constant attraction to children.

25     Why would he not talk to his counselor, his psychiatrist,

1      and say, you know, I think I have this problem and maybe I'm

2      a pedophile.  You know, I hate to use that term.  But I've

3      had this ongoing problem.

4              Why would that not be something you would want to

5      discuss with a psychiatrist?  Isn't that a lack of insight?

6      Isn't that someone who is perhaps more dangerous if they're

7      not trying to reach out and get help?

8              I mean, he receives a VA disability.  So he's not

9      paying for these services.  So he has the option or the

10     opportunity to get that kind of help.  That's another

11     question.

12              MR. LAZARUS:  Well, Your Honor, we just want the

13     Court to understand that he was seeking treatment.  He was

14     seeking help because he knew that he had a problem and he

15     wanted to address that.  So we believe that that is

16     something that the Court can consider, that he was trying to

17     seek it out.

18              We also want the Court to consider the fact that he

19     has letters of support which the Court has attached to our

20     sentencing memorandum.  And there is a number of people in

21     the community who know David and who think highly of him

22     despite his offenses.  They're all aware of his prior

23     conviction, and they're aware of what he's currently -- why

24     he's before the Court.  But they believe that he is a good

25     person deep down.

1    Heather Hoty, who is referenced in one of our letters,

2    is here in the courtroom today.  She has been very helpful

3    and she stands by David.

4    The other letters that we have referenced are all

5    people in the community, none of which have criminal

6    records, who know David from either church or just from the

7    community.  And they believe that deep down he is a good

8    person, that he has done good things in his life.  And we

9    want the Court to consider that.

10    In total, obviously these offenses speak for itself.

11    The Court is aware and David is aware that this is a

12    reprehensible and terrible offense in which people were

13    victimized.

14    David also understands he has a history dating back

15    over 30 years of hands-on offenses and that the Court has

16    considered that and is aware of that.

17    But he has done some good things in his life.  He has

18    worked.  He has been in the military, and he has developed a

19    community support system.  And he recognizes his mental

20    health issues.

21    But he wants the Court to know that given all of that,

22    given all the consideration of his background and all the

23    things that he has done, that he is not the top end, that he

24    does not warrant the statutory maximum in this case.

25    And we believe that the Court should impose a variance

1          that adequately reflects his history and circumstances and

2          the mitigating things in his life.

3               And it will be a significant sentence that does

4          properly account for his offense and for the victims in this

5          case.

6               So we're asking the Court to impose a variance at

7          sentencing accordingly.

8               Thank you.

9                    THE COURT:  All right, sir.  Thank you.

10              Mr. Richards, what if any statement do you want to

11         make on your own behalf, please?

12                   THE DEFENDANT:  Yes, Your Honor.  Good afternoon,

13         Your Honor.  I thank you.

14              As you may understand, Your Honor, I'm very nervous.

15         If it please the Court.

16                   THE COURT:  Relax.  Just take your time.  There

17         is no reason to be nervous.  I know this is an important and

18         difficult day.  Take your time.

19                   THE DEFENDANT:  Yes, Your Honor.

20              I would like to read from a prepared statement.

21              Your Honor, I do thank you for the opportunity to

22         address this Honorable Court.  Mere words cannot express my

23         sorrow, shame, and remorse for my actions.  So with this

24         Honorable Court's leave, please permit me to express in the

25         strongest possible language that I am sincerely remorseful

1    and that I am deeply and humbly mortified by my behavior.

2         I apologize, first and foremost, to all persons and

3    their families victimized by my actions as well as to my

4    family, friends, former coworkers, and veterans for any

5    pain, embarrassment, shame, breakdown of trust that my

6    behavior has caused.

7         I recognize that the relentless sharing of images such

8    as these perpetuates the victimization of each human being

9    involved.  And for my participation in that activity, I am

10   humiliated and I am truly sorry.

11        Your Honor, my life has not been all about my

12   offenses.  I wish to communicate to this Court that you not

13   perceive me as such.  I know that I have a problem.  I have

14   tried to abstain from this behavior.

15        To make up for any wrongdoings, I have tried to better

16   myself and better those around me.  I earned my bachelor's

17   degree at the age of 61.  I have done volunteer work to help

18   those less fortunate, trying to make amends.  This includes

19   serving as an elder, a lector, usher, a Eucharist minister

20   with my church, as well as serving as a volunteer with the

21   Cuyahoga County Animal Shelter, Wheels on Meals, Habitat for

22   Humanity, WVIZ Public TV, Harvest For Hunger, and the

23   Combined Federal Campaign.

24        Your Honor, I genuinely do wish to obtain treatment by

25   participating in the RDAP program as well as any sex

1    offender treatment program deemed suitable by the Court.

2         I wish to participate in 12-step programs offered by

3    Life Recovery, and SLAA, Sex and Love Addicts Anonymous.

4         Upon release, I plan to reconnect with the services

5    offered by the Veteran's Administration to continue my

6    counseling and treatment.

7         My primary goal is to help others, especially

8    veterans, who suffer from pornography addiction.

9         Your Honor, I wish, through counseling, treatment, and

10   accountability, to effect a sincere and permanent change in

11   my lifestyle, never to engage in these shameful and damaging

12   activities again.

13        Thank you.

14            THE COURT:  Thank you, sir.

15        Counsel for the government, what's the government's

16   position regarding this matter, please?

17            MS. SKUTNIK:  Thank you, Your Honor.

18        I know that this Court has had the opportunity to

19   review the government's sentencing memorandum, and I have

20   tried to give a very thorough picture to this Court of what

21   the government is aware of as it relates to Mr. Richards'

22   history and characteristics as well as the facts of the case

23   before this Court today.

24        Your Honor, I would submit to this Court that Mr.

25   Richards is the poster child for 240 months; that he is the

1    poster child for the maximum sentence in this type of case.

2            This is a sentencing for the charge of receipt and

3    distribution of child pornography.  And counsel for the

4    defense tries to distinguish this case, to minimize this

5    case, and to minimize the prior behavior of Mr. Richards.

6    And I would just like to make a few, hopefully brief,

7    remarks as it relates to that.

8            First of all, this Court has in the past and has today

9    expressed a rejection of a wholesale dismissal of the

10   guidelines.  I simply want to point out a couple of

11   important things.

12           When law enforcement works these cases -- and I have

13   worked along with them and I have reviewed these images that

14   they have discovered on computers.  I have watched the

15   categories that they have marked.  There is a category that

16   they mark that's "suspected child pornography" when,

17   according to case law, they do the same thing a jury would

18   do, they look at the image and they try to determine if they

19   can establish that that minor depicted in the image or the

20   video is in fact somebody who is under the age of 18

21   pursuant to the federal definition.

22           A child that is prepubescent is fairly easy to

23   recognize and fairly easy to acknowledge and to count with

24   significant confidence as a minor.  And so those images are

25   readily marked as suspected child pornography because the

1    child has minimal development, unlikely to have pubic hair,

2    and minimal breast development or development of the

3    genitals.

4         What gets far more difficult are images of a child

5    that has begun to go through the process of puberty.  And so

6    what you frequently find in these cases are categories of

7    either "age difficult" or what they call "child erotica."

8    And those are images that they cannot neatly place into that

9    little bin.

10        And so, of course, you will see the frequency of the

11   enhancement for prepubescent because if I don't have a known

12   victim of a postpubescent child, it is very difficult to

13   bring a case with evidence beyond a reasonable doubt that

14   that is in fact a minor.

15        And so that is a law enforcement technique and

16   strategy, and it makes sense that that is what you would see

17   in these enhancements because that's how we engage in our

18   investigations.

19        The other thing that I would point out is I have

20   prosecuted many, many cases that were being brought by the

21   United States Postal Service of people who had received,

22   still to this day, child pornography through the United

23   States mail.  That is a case that does not involve the use

24   of a computer.

25        And in fact, and frankly, the introduction of the

1       Internet and computers has blown this industry exponentially

2       and the harm to the children exponentially.  And the fact

3       that that only counts for two levels really to me seems to

4       minimize the effect of the Internet on these poor victims

5       whose images now reach all of the corners of the earth.

6               The other thing that I would simply point out on that

7       argument is that the guidelines for child pornography

8       offenses are artificially low.  The base offense was set at

9       a 22 which is artificially low such that when you add two

10      levels for prepubescent minor and for use of a computer you

11      only get to a 26 which puts us at or around the mandatory

12      minimum term for these types of offenses.

13              Moving on, Your Honor, from that, I would like to

14      focus a little bit more on some of the remarks that were

15      made about the size of the defendant's collection in this

16      case.

17              So still sticking with and focusing on the facts in

18      this case, the indication and the argument to this Court is

19      that the number of images possessed or that was in the cache

20      of Mr. Richards' collection is small and that we have seen

21      many, many other cases where the numbers are far larger.

22              And if this was Mr. Richards' first time that he ever

23      appeared before a court, if he was never before a court

24      before for matters concerning child pornography, that may be

25      a more valid argument.

1          But what do we know about Mr. Richards?  Well, we know

2     that it wasn't his first foray into the criminal justice

3     system.

4          I also indicated in my sentencing memorandum and point

5     out that the defendant admitted that in 2012, the Ohio ICAC

6     knocked on the exact same door, put him in the exact same

7     van, or a van, I should say, very much identical to the van

8     that he was interviewed in in connection with this case

9     because they had probable cause to execute a search warrant

10    at his home, to suspect that he was engaged in child

11    exploitation behavior, child pornography.

12         And Mr. Richards proudly professed to law enforcement

13    that ICAC didn't find anything on his computers.  And there

14    were no images that were found.

15         I reviewed that interview.  I watched his same

16    sheepish presentation.  Woe is me.  I'm so sorry.  Somebody

17    reached out to me.  They wanted me to do a tribute photo.

18    And I simply shut down that communication and I stopped

19    speaking with them, and that was the end of that, which is

20    not entirely true.

21         But the fact of the matter is, law enforcement knocked

22    on his door in 2012.  And so Mr. Richards has learned from

23    that experience.  What Mr. Richards has learned is that when

24    law enforcement comes knocking on your door with a search

25    warrant in connection with child pornography, they're going

1     to look at your computer devices.  They're going to get in

2     there.  They're going to find what's in there.  They're

3     going to find your search history.  They're going to find

4     the images that you have saved.

5          Last time he had successfully deleted all material.

6     This time he went a different route.  He didn't store child

7     pornography the way that many of what I would now consider

8     less experienced offenders do.  He didn't place it on

9     external hard drives.  He didn't put it on disks or CD's.

10    And frankly he didn't store it in nice little file paths on

11    his computer the way that some folks do because he knew that

12    he had a never-ending supply of child pornography when he

13    got on that website.

14         When he got on that website, there was like-minded

15    individuals who were sharing links of child pornography that

16    he could access without storing them and downloading them to

17    his computer where he could get caught.

18         The other thing that counsel says is, well, Mr.

19    Richards immediately admitted his behavior in this case.  He

20    was forthcoming.  He was honest.  And he gave a full

21    confession.

22         And, Your Honor, I would submit to you that that is

23    because as Mr. Richards sat in that van that day, he knew

24    that there was law enforcement in his house that were

25    seizing his devices, that would forensically review them,

1      and they would find that material.

2            So I don't think he should get a whole lot of credit

3      for saying, you know, yes, you will find child pornography

4      on my computer when you know darn well that forensically

5      that's exactly what they're going to do, and also because

6      they told him that they were there because they had evidence

7      that he had been engaged in child exploitation behavior.

8            And so when you couch what he did and what he said and

9      how he behaved in the much bigger picture, it's not really

10     much of an argument in his favor.

11           The other thing I would say is that he lied to the

12     agent.  The agent repeatedly pressed him.  And he told this

13     agent that the only reason why he pled guilty to the gross

14     sexual imposition case was to get it over with and basically

15     to spare anyone from having to testify.

16           And then it wasn't until later when he was polygraphed

17     that he ultimately admits that he was engaged in some type

18     of sexual touching of his daughter and others which at least

19     would be more consistent with the plea that he entered into

20     in the prior gross sexual imposition, sexual imposition

21     cases.

22           The defense counsel submits to this Court that Mr.

23     Richards has a history of approximately 30 years.  And if I

24     do the math, it looks more like 38 years.

25           He submits to you that you should consider his service

1   to the United States as a mitigating factor.  I would submit

2   to you that during his service, he exploited children

3   overseas.

4       And what really sticks out in my mind about his

5   description of those offenses that I have included in my

6   sentencing memorandum on page 7, referencing activity in the

7   Philippines, is this statement.  He said, "None of my sexual

8   contact with these minors was nonconsensual."

9       Talking about 12 to 14 year old girls, "none of my

10  sexual contact with these minors was nonconsensual," as if a

11  child of that age in those conditions could consent to the

12  sexual activity described.

13      That's just the beginning.  That's just what we know.

14  That's the tip of the iceberg, I would submit to this Court,

15  that we know about what has transpired over the nearly 40

16  years of Mr. Richards' access to children in the community.

17      The incident that occurred in the mall is incredibly

18  troubling for so many reasons.  And again, Mr. Richards says

19  to you, Your Honor, I want treatment.  And I say BS, because

20  you had an opportunity to have treatment.

21      After he got caught in the mall, he could have sought

22  treatment.  He had the resources.  He had the ability to do

23  that.  He had an opportunity to seek treatment after his

24  conviction.

25      There is no indication that he received treatment as

1     part of --

2                    THE COURT:  Just to be fair, I think he did,

3     according to the report, have some sort of treatment while

4     he served his state sentence.

5          I just -- again, I want to be sure that we

6     don't -- probation staff might be able to point me to that

7     paragraph, but I seem to recall that he did receive, or

8     there was some effort made.

9          And I know treatment options are limited, and I don't

10    know whether it was part of his ten years of post -- or

11    parole, whether they, they meaning the state, ordered

12    treatment for him as conditions of his sentence back in the

13    time frame in question.

14         I know I read it somewhere.  Or at least I believe I

15    did.

16         Am I mistaken, or did I miss it here?  I'm sorry to

17    interrupt your presentation, but I think it's an important

18    point.

19                    MS. SKUTNIK:  Your Honor, I'm reviewing paragraph

20    31 which speaks of his prior conviction.  I don't see it

21    there.  And I'm also reviewing paragraph 48 which is the

22    category of mental and emotional health, and I don't see it

23    referenced there.

24         I'm not sure if there was -- I don't recall there

25    being something in defendant's memorandum to that effect.

1          THE COURT:  Did you locate any information?

2          THE PROBATION OFFICER:  Your Honor, all I'm aware

3     of is the stuff at the VA for his depression.

4          THE COURT:  All right.  Perhaps I was in error

5     then.

6          I'm sorry.  Go ahead, counsel, if you would like to

7     finish your argument.  I apologize for interrupting.  I'll

8     continue to look and see if I might have located it

9     somewhere in the report.

10          I would be surprised if the state system, with a

11     17-month sentence, if he was afforded any treatment in

12     custody.  But that's a different matter.

13          MS. SKUTNIK:  And frankly, Your Honor, I can

14     argue that both ways.  He either didn't receive treatment,

15     or if he did as part of a court-ordered period of

16     supervision to follow his incarceration, what it indicates

17     to me is that it was not successful because Mr. Richards has

18     a profound and prolific sexual attraction to prepubescent

19     female children and one that was not curtailed, if he did

20     receive treatment, or that he wasn't honest about when he

21     received treatment because, frankly, if you're not

22     forthcoming, it's garbage in, garbage out.

23          And we know that as early as 2012, he had another

24     knock on his door.  He had another opportunity to try to

25     arrest the beast, to receive help.

1     But when I look at the discussion of him receiving

2     mental health services from the VA, it says nothing about

3     trying to deal with a sexual attraction to children.  It

4     talked about relationships with his daughter and

5     difficulties sleeping at night.

6     So it's hard to accept as genuine that now, 38 years

7     later, we're still listening to, oh, I'm profoundly sorry.

8     Please accept my apologies.  I want help.  I'm so sad.

9     Because the defendant has never taken sincere steps to

10    arrest his behavior and to curtail the harm that he causes

11    to our children.

12    Your Honor, I know, again, I've probably gone longer

13    than I had originally intended.  But it is so rare that I

14    stand here before the Court with so many things to argue

15    that in my mind, under the 3553(a) factors, warrant the

16    maximum sentence, which in this case is 240 months.  But I

17    believe that that is what this case calls for, and I submit

18    or request that that is the sentence of the Court.

19    Thank you.

20         THE COURT:  Thank you, counsel.

21    Anyone else?  Mr. Lazarus, anything else you would

22    like to add?

23         MR. LAZARUS:  Your Honor, just to go to the

24    Court's question that Mr. Richards, while he was in the

25    state prison in Madison Correctional, he did do sex offender

1    treatment while incarcerated.  And then while on post

2    release control he was receiving treatment in the community.

3             THE COURT:  Is that something in your brief?  Is

4    that where I found it, or is that something you're just

5    calling to my attention now?

6             MR. LAZARUS:  The part of Madison Correctional is

7    on page 20 of my brief.

8        I don't believe him receiving treatment is in my

9    memorandum.

10       I have the same recollection as you.  I know I saw it

11   somewhere.  I just can't remember exactly where.

12            THE COURT:  Makes me feel better that I just

13   didn't pull it out of thin air.

14       In any event, the Court would note for the record I've

15   carefully considered the matter.  It's an extraordinarily

16   difficult case as most, if not all, of these are.  And I

17   will set forth the reasons for the Court's sentence.

18       We begin with the nature and circumstances of the

19   offense.  The defendant is before the Court having pled

20   guilty to receipt and distribution of visual depiction of

21   minors engaged in explicit conduct.

22       In 2017, using the online name She's Ten and another

23   name that I won't read into the record, given the nature of

24   it, the defendant distributed at least 29 images depicting

25   child pornography through an Internet based chat room.

1        During a search of his residence in February of 2018,

2    agents located a computer that contained 342 child

3    pornography images, 18 video files depicting child

4    exploitation.

5        The defendant admitted possessing the aforementioned

6    material and distributing child pornography images through

7    an Internet chat room.

8        And we'll talk about it more later, but the defendant

9    gave an extensive and detailed statement outlining the

10   nature and circumstances of the offense as well as a great

11   deal of information about his prior history and other

12   matters that are, of course, relevant.

13       And I will incorporate by reference, as we had some

14   discussion earlier, the report from Homeland Security.  The

15   defendant's statement is remarkably candid and sets forth a

16   great deal of materials about his prior history and his

17   sexual interest in children.

18       The history and characteristics of the defendant.

19   He's 61 years old.  He was adopted as an infant, reared by

20   his adoptive parents in Toledo, Ohio.

21       He had some difficulties, according to the defendant's

22   sentencing brief or memorandum, I believe, some difficulties

23   as a student in the school system.  I believe he was in a

24   Catholic school, if I'm not mistaken, according to the

25   briefing by the defendant, and had difficulties as a

1    student.

2         And after graduating high school, he enlisted and

3    served in the U.S. Navy for 20 years before obtaining a job

4    as a human resources representative in our probation office

5    in Cleveland, Ohio.

6         He eventually lost that job as a result of his

7    conviction for gross sexual imposition against his

8    prepubescent daughter in 2006.

9         After completing a 17-month term of incarceration, Mr.

10   Richards worked in multiple restaurants before most recently

11   obtaining a human resources job at the Veteran's hospital in

12   Cleveland.

13        In 2017, he earned a Bachelor's degree from Notre Dame

14   College of Ohio, and months later he was arrested for the

15   instant offense.

16        Mr. Richards has two children, one of who was the

17   victim of his first sexual offense conviction, and the other

18   child that he never met as a result of his restriction of

19   being around minors.

20        Prior to his arrest, he did pay child support for his

21   younger daughter.

22        His older daughter is estranged from her father based

23   upon the earlier events in question, but most recently this,

24   obviously these charges and convictions, have further

25   estranged the parties.  And she is, of course, not

1      communicating with her father because of this matter.

2            The defendant is a criminal history category II as a

3      result of accumulating three criminal history points for a

4      prior sex conviction in 2006.

5            In that case Mr. Richards engaged in sexual contact

6      with his biological daughter when she was between the ages

7      of 7 and 13 by repeatedly touching her in various areas of

8      her body, her buttocks, her breasts, and thigh areas,

9      according to his daughter.

10           Their family has reason to believe the defendant has

11     possibly committed other unverified sexual offenses against

12     children that was never reported to law enforcement

13     authorities.  Notably against a prepubescent child in the

14     '80s and against a niece in 2002.

15           Just so it's clear for the record, I will take these

16     allegations with a grain of salt.  Obviously they are

17     allegations.  And so I, again, will note for the record, as

18     I have mentioned the earlier allegations made by the

19     defendant's ex-spouse, that obviously they are allegations

20     and they are currently part of the report.  And so I will

21     accept them as that.

22           However, that being said, the allegations as set forth

23     do not appear to be as farfetched as one might think.  And I

24     think perhaps the most probative or more probative

25     information that I have is the defendant's own statement.

1          And we can discuss that further, but the defendant, by

2     his own admission, indicates that he had a sexual attraction

3     to girls between the age of six and twelve.

4          And he said, "Prior to 2005 when I had the GSI

5     conviction, or incident, my daughter would bring over

6     girlfriends to our residence.  At times I did find some of

7     these girls to be sexually attractive.  I did use them for

8     masturbatory fantasies."  And he indicated that he engaged

9     in that conduct more than 50 times to various friends.

10          So it is not farfetched, unfortunately, to believe

11     this defendant, with this unfortunate sickness, the desire

12     for these children -- again, these other incidents, again,

13     it is not too farfetched to believe that he may have engaged

14     in the conduct.

15          And I don't use that as a specific basis of the

16     Court's sentence, but, you know, his statements are, again,

17     the most important part of assessing those matters.

18          As far as the sentencing disparities, defendants with

19     similar records and conduct, there is the U.S. Sentencing

20     Commission compiles sentencing data comparing offenses in

21     each of the six criminal history categories.  The data for

22     this defendant's offense of conviction for fiscal year 2017

23     is as follows:

24          The national sentences for individuals with a criminal

25     history category of II who are convicted of child

1    pornography offenses is 190 months.

2         Considering that the instant offense involves the

3    defendant's second sexual offense conviction in 12 years,

4    the probation officer has recommended a sentence about or

5    above -- I should say about the national average is the best

6    to ensure public safety.

7         And the guidelines and the sentencing disparities are,

8    again, based upon in many ways various judges around the

9    country varying for various reasons.

10        And so I think that in many ways we have wide-ranging

11   disparities because of the views, the differing views of

12   various judicial officers regarding the child pornography

13   guidelines.

14        Before I turn to the need for the sentence imposed,

15   I'm required to address, and I will address, the arguments

16   that have been raised by counsel for the defendant in terms

17   of trying to decide a sentence.  And so I want to

18   acknowledge the arguments that have been made by the

19   defendant for any reviewing court.  I'll note that I'm going

20   to try to address each in turn, given the numbers and the

21   volume of those arguments.

22        Counsel for the defendant, you can correct me if for

23   some reason I don't address each argument that you've

24   raised.

25        I'll address the general argument regarding the

1      guidelines and whether the inherent flaw is in the child

2      pornography guidelines.  Again, I will adopt my own view,

3      and I've written other opinions on these issues.

4           I think at least for the most part the guidelines are

5      appropriate in these type of cases.  And I don't believe

6      that, particularly in this type of case, the guidelines are,

7      the use of the guidelines is inappropriate.  And I do not

8      disagree with them on policy grounds or policy reasons.

9           And I say that for several reasons.  Even with the

10     guidelines, we do have the ability to vary based upon the

11     various 18:3553(a) factors.  I've used that in the past.  I

12     will continue to use that.

13          In those cases where I think the guidelines are

14     excessive or greater than necessary, then I will obviously

15     exercise that discretion.

16          But as a policy matter, I think the guidelines are an

17     appropriate starting point.  As a policy matter, I think we

18     owe it at least -- and I will not comment on other jurists.

19     They're free to do as they wish.  I think my duty is to

20     apply the statute, apply the law.

21          And I think in this case, these type of cases, the one

22     thing that we continue to miss and that jurists continue to

23     miss, yes, we need to consider the history and

24     characteristics of the defendant, their background and their

25     experience.

1          But I think far too often, as I've said in the past,

2     we sanitize these images because we describe them in detail

3     in our reports.  But they are sanitized images.  We talk

4     about sadomasochistic conduct or pictures or images.  We try

5     to attach big terms and big words to these pictures.

6          These are the pictures of little children at the worst

7     moment of their lives.  And make no mistake, these

8     are -- many of these cases, these are little children.

9          Instead of focusing on the offender, we also need to

10    add balance, as judges, to the focus on the victims.  These

11    victims, as I have the victim impact statements, these are

12    victims that have been, their pictures were taken, some of

13    them, many years ago.  They continue to be victimized,

14    constantly victimized, because their images are out there on

15    the Internet.

16         And when you say the use of a computer is in every

17    case, well, yes, it is.  And the use of the computer is

18    extremely damaging.  It's harmful.  It is what makes these

19    types of cases so prolific, and why we have so many is

20    because we have the Internet and the ability to worldwide

21    share these images, and because worse than that, the victims

22    are victimized over and over and over.

23         It's not like a bank robbery where the bank teller is

24    robbed and she, of course, is terrified because the robber

25    may have a gun.  And that passes, and she may be able to

1     seek counseling and that is a one-time occurrence.  In these

2     cases, these children are continually victimized.

3     Continually victimized.

4          So as a jurist, I don't disagree.  I have a policy.  I

5     think the guidelines are appropriate.  My policy is that we

6     need to send a very strong message to individuals -- this is

7     individual-type sentencing -- that these type of cases need

8     serious consideration, and that lengthy sentences are most

9     frequently needed in these kind of cases because individuals

10    that in some way, shape, or form, as in this defendant, even

11    worse than others, obtain sexual gratification from watching

12    children -- and I say this because that's frequently what

13    they are -- little babies and children being raped.  Those

14    people are dangerous individuals in the community.  And they

15    need to be incarcerated.  They need to be deterred.  And

16    then they need to receive treatment once they are released

17    back into the community.

18         And then returning to this particular case, the

19    defendant, of course, having addressed the guidelines, I

20    acknowledge the defendant had a difficult upbringing.  He

21    was adopted and raised by adoptive parents.  And I think he

22    had challenges as a child.  And I acknowledge that and the

23    possible abuse and his difficult challenge.

24         I acknowledge his military career.  And sadly, I hate

25    to -- again, his military career, I acknowledge his service

1    to the country, but tragically, as he self-reported, his

2    interest in children began while his service to the country

3    was ongoing, began with children in the Philippines, 12 to

4    14, and that is where this all began.

5        So those are, again, all those things have to be taken

6    into consideration.

7        I acknowledge the defendant has issues regarding

8    depression and other described illnesses as set forth in the

9    report.  It appears he received psychiatric services.

10   Unfortunately, he did not, at least based on what we know so

11   far, did not make a full disclosure on his attraction to

12   children and the issues that are most severe and most

13   compelling that bring him here today.

14       One might have hoped, Mr. Richards, you might have

15   done that in the past.  You are and were unbelievably candid

16   about your interest in children and your prior sexual

17   history involving children.  And the fact that you do

18   receive gratification from the mere touch, the way I read

19   this report, I read your statement, these children, as they

20   pass you in the restaurants and other places, even that type

21   of contact with these children apparently triggers your

22   desires.  And that makes this case, again, even more

23   difficult.

24       The arguments for a variance -- candidly, I've looked

25   at this report.  The argument about a variance for his

1    military service, a variance based upon his employment, you

2    know, I acknowledge that.  But then there is the other side

3    of the equation, the double life, this activity and these

4    children.

5         And the guidelines, as I've already talked about, and

6    as I've used in the past, will continue to use, I think it's

7    important, the report to Congress by the Sentencing

8    Commission, I know it's somewhat dated now, 2012 was the

9    report, much of it continues to remain relevant in my view.

10   Much of it is important.

11        And the three characteristics we talked about earlier,

12   the content of the offender's child pornography collection,

13   the nature of it, the types of sexual conduct depicted in

14   the images, the ages of the victims, the extent to which the

15   offender has organized and maintained his collection over

16   time, the degree is number one.  Number two, the degree of

17   the defendant's engagement with others, the Internet

18   community.  And then the history of engaging in sexually

19   abusive exploitative or predatory conduct.  And all three of

20   those weigh against the defendant.

21        His collection is such as described in the report.  It

22   is a collection.  Yes, we see substantially more.  But the

23   nature of the collection speaks for itself.  I won't

24   describe it, but it certainly does not work to the

25   defendant's benefit.

1          In terms of his engagement with other offenders, we

2     know he's involved in chats and chat rooms, and that makes,

3     again, that is an indication that this is not -- this is an

4     individual who is clearly interested in not only child

5     pornography but children.

6          His use of the names, the chat names of She's Ten and

7     Kid -- pardon me -- but Kid Cunt for the use of his current

8     Snapchat user names, according to the current case title,

9     and so the use of one or both of those names obviously gives

10    you some indication of the defendant's interest.

11         So I struggled to find a reason why the mandatory

12    minimum is not appropriate here.  And, again, I would point

13    to any reviewing court the most compelling is the

14    defendant's own statement which is completely forthcoming.

15         I don't know if that's a cry for help or what it might

16    be, but his own self-admitted interest in children between

17    the ages of six and twelve and his self-admitted prior

18    conduct involving these children, again, make this a very

19    extraordinarily difficult case for Mr. Richards and his

20    attorney.

21         As far as the need for the sentence imposed, just

22    punishment, adequate deterrence, protect the public, improve

23    the offender's conduct and condition, the defendant has a

24    history of sexually inappropriate conduct dating back many

25    years.  He's allegedly committed various uncharged sexual

1    offenses against strangers in the mall and minor relatives

2    at family gatherings.

3          And, again, I make that reference, although, again,

4    that evidence, that reference in the PSI is given much less

5    weight than the defendant's own admissions.

6          We do have, it's unrefuted, his conviction of multiple

7    counts of gross sexual imposition against his prepubescent

8    daughter.  He was incarcerated for 17 months, released in

9    2007.

10         The government does call to our attention -- it's in

11   their brief; it's unrefuted -- that there was this incident

12   in 2012 where agents interviewed Mr. Richards.  One would

13   have hoped that that would have triggered some concern on

14   his part.  But he was incarcerated.  And then less than ten

15   years after, this in 2007, the GSI, he was incarcerated.

16   And then he was arrested for this conduct, the instant

17   matter involving the defendant using peer-to-peer file

18   sharing programs to receive and distribute numerous picture

19   and video files of prepubescent children being sexually

20   abused on the Internet.

21         And again, it's a challenge.  Mr. Richards, I wish

22   things were different.  It is really a difficult case

23   because of your history and your self-admitted ongoing

24   interest in children.

25         I have a duty to protect the public and afford

1       adequate deterrence, and this is a serious offense, and

2       these are serious offenses.  But more importantly, your

3       history and characteristics and your ongoing attraction to

4       children make this so challenging.

5              And with all due respect, the Court will do the

6       following:  Pursuant to the Sentencing Reform Act of 1984

7       and 18 United States Code 3553(a), it will be the judgment

8       of the Court the defendant, David Richards, is committed to

9       the custody of the Bureau of Prisons for a term of 230

10      months.

11             I'll set aside the ten months.  I know there is a good

12      argument to be made under most circumstances for the

13      statutory maximum.  And for the reasons only that the

14      defendant did serve in the military for some period of time

15      and also served the VA, and his education that he has earned

16      over that period of time deserves some small consideration.

17      And that will be the consideration that I provide.

18             When you're released from prison, you'll be placed on

19      supervised release for the rest of your life.  I believe

20      based upon the statements of the defendant, his ongoing

21      interest in children, a mandatory period of life is

22      certainly called for.

23             And as it relates to the term of supervision, I would,

24      once again, refer to the defendant's own statement as to his

25      interest with children as well as his prior GSI.  The

1    supervision will be needed and necessary.

2            I'll waive the fine.

3            The special assessment of $100 is due immediately.

4            And then all the mandatory and standard conditions

5    adopted by the Court in Part D will be put in place.

6            You must refrain from the unlawful use of a controlled

7    substance, submit to one drug test within 15 days of being

8    released from prison, and to at least two periodic drug

9    tests as determined by the Court.

10           I will recommend the RDAP program.  The defendant may

11   have issues with alcohol and drugs.  And so -- particularly

12   alcohol, so we'll make the recommendation.  Any type of

13   treatment the defendant can receive would be to his benefit.

14           You must participate in the sex offense specific

15   assessment.  It's my order that when the defendant is

16   released, if not sooner, and hopefully the Bureau of Prisons

17   will become more -- or has become more advanced, the

18   defendant will receive a very detailed assessment and

19   psychiatric evaluation regarding his issues to determine

20   what if any treatment conditions can be put in place.

21           You're required to participate in any treatment

22   program as to substance abuse, alcohol, what have you.

23           And the testing will be put in place.  You can't

24   tamper with that testing, that efficiency of that testing in

25   any way.

1           And bear in mind, sir, you cannot possess, use a

2     computer or electronic device or data storage devices or

3     media without the prior written approval of your probation

4     officer.

5           And your computers may be subject to a search as,

6     again, a computer search, and that search will be consistent

7     with the search and seizure provisions we put in place.

8           Your property, house, residence, vehicle, papers,

9     computers, any electronic communications or data storage

10     devices or media may be subject to a search conducted by

11     your probation officer.

12           Failure to submit to a search may be grounds for

13     revocation of release.  And you must warn other occupants

14     that the premises may be subject to a search pursuant to

15     this condition.

16           You'll be required to cooperate and register under the

17     Adam Walsh Act.  And that is something similar, sir, to what

18     you did when you were, I think for ten years, after you were

19     released on the GSI.  You'll be required to register under

20     the sex offender registration act, notification act,

21     sometimes called SORNA.  Keep your registration current in

22     each jurisdiction where you reside.

23           And no later than three business days after each

24     change in name, residence, employment or student status

25     appear in person in at least one of those jurisdictions and

1    inform the jurisdiction of all your changes.  And as you

2    approach your release date, I'm sure you'll be reminded.  If

3    you fail to -- if you violate or do violate, I should say,

4    that condition, that could be a new federal offense

5    punishable by up to ten years.

6         You may not possess or view any visual depiction,

7    including any photograph, film, video, picture, computer or

8    computer-generated image or picture, whether made by or

9    produced by electronic, mechanical, or other means, or

10   sexually explicit conduct.

11        And most importantly among all of this is that you

12   will participate in a sex offense specific treatment

13   program, follow the rules of that program.  And you will be

14   supervised.  You cannot access the Internet except for

15   reasons given by your probation officer.

16        Your computer will be monitored, and you must allow

17   software monitoring to be installed on your computer.

18        And you must allow the probation office to conduct

19   periodic and limited searches of that computer.  And

20   that -- to determine whether, again, there has been any

21   problems or issues with that computer monitoring.

22        You cannot have contact -- again, this will trigger a

23   violation, I'm sure you understand.  You cannot seek,

24   obtain, maintain any residence, employment, volunteer work,

25   church, recreational activities involving minors, persons

1   under the age of 18, in any way without the prior express

2   written approval of your probation officer.

3        You can't reside in direct view of schoolyards, parks,

4   public swimming pools, playgrounds, youth centers, video

5   arcades, or other places primarily used by persons under the

6   age of 18.

7        And you can't loiter around any schoolyards, within

8   100 feet of schoolyards, playgrounds, theme parks, arcades,

9   swimming pools, skating rinks, toy stores, other places

10  where people under the age of 18 congregate or gather

11  without the approval of your probation officer.

12       And your residence and employment must be approved by

13  your probation officer.  Any change in that must

14  be -- again, those residence, employment must be approved by

15  your probation officer.  And you need to give your probation

16  officer notice of those changes at least 20 days prior.

17       And you cannot reside within 1,000 yards -- or 1,000

18  feet of any school or daycare center without the express

19  approval of your probation officer.

20       And given the circumstances here, you must consent to

21  enhanced extensive home inspections which include examining

22  under beds, mattresses, cabinets, closets, drawers, trash

23  containers, other personal spaces to make sure that there is

24  no child pornography in those premises or in those

25  whereabouts, those areas.

1      Counsel for the government, any objections,

2   corrections, any arguments that have not been previously

3   raised under *Bostic* that I can address?

4      MS. SKUTNIK:  Your Honor, no objections to the

5   sentence.  I would direct the Court's attention to the

6   additional special assessment pursuant to 18 United States

7   Code Section 3014 that does apply to child exploitation

8   cases within the time frame of the defendant's case.

9      THE COURT:  All right.  Thank you.

10     We will assess the $5,000.  And hopefully the

11  defendant -- obviously during his period of incarceration,

12  ten percent of his -- or 25 percent of what he may earn may

13  be applied to those items, I would suspect, would be the

14  method, manner, and means of perhaps paying that special

15  assessment.

16     Counsel for the defendant, do you have any objections

17  under *Bostic*?

18     MR. LAZARUS:  Your Honor, first of all, we would

19  object to the length of the sentence.

20     But as to the special assessment of $5,000 under that

21  3014, if the Court makes a finding that he is indigent, the

22  Court can waive that fine.

23     Mr. Richards cannot afford counsel.  He has no money.

24  He has been incarcerated and has no income.  So we would ask

25  that the Court waive the $5,000 special assessment.

1          THE COURT:  Well, the special assessment, as I

2     understand it -- both sides can enlighten me if you would

3     like -- is designed to compensate the victims of these type

4     of offenses.

5          Am I correct?

6          MS. SKUTNIK:  Correct, Your Honor.

7          THE COURT:  And we have in this case, attached to

8     the government's sentencing memoranda, we have victim impact

9     statements from victims who were part of this case whose

10    pictures are available on the Internet.  They're part of

11    these various collections that make the rounds.

12         So I recognize the defendant is indigent.  That does

13    not mean that I cannot impose it, as I understand it.  That

14    I can impose it.  And then the Bureau of Prisons can assess

15    it as against any earnings he might have, given the length

16    of his time of incarceration.

17         Am I mistaken?  Again, I understand that I have some

18    discretion, but it's a special assessment.  The same applies

19    with the $100 special assessment.  It's a bit different, but

20    either side care to enlighten me?

21         MR. LAZARUS:  Your Honor, we would just say that

22    if we are talking about money that goes to the victims,

23    that's what restitution is for.  There has been no

24    restitution claims.

25         But the Court does have discretion as to whether there

1     is a finding of indigency.  And if there is a finding of

2     indigency in this case, the Court can waive that fine.

3                  THE COURT:  Is the defendant going to continue to

4     receive his VA disability?  He has got a pension.  He is on

5     disability.  Will be continue to receive that disability

6     while he is incarcerated?

7                  MR. LAZARUS:  It's going to be reduced once they

8     reassess it.

9                  THE COURT:  Reduced in what amount?  Is he going

10    to continue to receive money is the question?

11                 MR. LAZARUS:  He will receive some money, but it

12    won't be the same amount that he has been receiving.  We

13    don't know how much it will be reduced.

14                 THE COURT:  How much will it be?

15                 MR. LAZARUS:  We are not sure at this point.

16                 THE COURT:  Well, then I'll defer until such time

17    as you provide me with pertinent information about two

18    things.  Number one, about the amount of disability he will

19    receive.  Number two, whether he has any current ongoing

20    child support obligation.  I think, according to the PSI, he

21    was paying $536 a month toward child support.

22         So the question is, first of all, is he going to

23    continue to receive a benefit while he is incarcerated from

24    the VA?  And what amount?

25         And then what other obligations does he have as it

1       pertains to child support?

2               So if you provide me that information, then I will

3       make a final decision as to the special assessment.

4               Is that agreeable, counsel for the government?

5                       MS. SKUTNIK:  Yes, Your Honor.

6                       THE COURT:  And I am referring to the specific

7       $5,000.

8               Counsel for the defendant?

9               I'm sorry.  I stand corrected.  I should pull up the

10      PSI.  It's called Justice For Victims of Trafficking Act.

11      So, again, that is what we are discussing here.

12              So, counsel, do you have any objection to proceeding

13      in that fashion before I make a final decision?

14                      MR. LAZARUS:  How would you like us to inform

15      you?

16                      THE COURT:  Well, your client worked for the VA

17      in the human resources department.  Hopefully there is

18      someone there who either you can reach out or he knows who

19      you can discuss with them what will be the consequence now

20      that he has been sentenced, what will be the effect on his

21      disability.  And then you can reach out to opposing counsel,

22      maybe come to some agreement.  If you can't, then I'll be

23      glad to, again, hear from you and to allow you to provide me

24      the information.

25              You say he is indigent.  He may be indigent, but if he

1    has continuing monthly income while he is incarcerated,

2    that's, I think, relevant to whether or not I should impose

3    the $5,000.  I think it's also relevant if he has another

4    obligation.  I'm repeating myself a bit.  If he has child

5    support that's continuing on, then that child support

6    deserves and needs the support which he is responsible for.

7    And that might have a bearing on whether the $5,000, whether

8    I defer the 5,000 as opposed to making sure the income money

9    goes to the child, support of the child.

10           Do you have any questions, sir?

11                MR. LAZARUS:  Me or Mr. Richards?

12                THE COURT:  Either one.  If Mr. Richards knows,

13   he can tell us now.  Then we can go ahead and decide.

14                MR. LAZARUS:  No.  I discussed it with him.  He

15   doesn't know.

16                THE COURT:  What is his current monthly benefit?

17                MR. LAZARUS:  We'll have to look into it.

18                THE COURT:  I mean, has it been accruing since

19   you have been incarcerated?

20                THE DEFENDANT:  Child support, Your Honor?

21                THE COURT:  I assume the child support is coming

22   directly out of your check.

23                THE DEFENDANT:  Yes, Your Honor, it does.

24                THE COURT:  So why don't you find out how much

25   it's going to be reduced.  It may not be reduced at all if

1    the money is going directly to child support.

2         I want to be fair to both sides before I decide

3    whether to impose it or not.  I want to be sure if you have

4    the ability to pay it from your disability benefit while

5    you're incarcerated, then that is something I will consider.

6    If you have child support obligations that will eat up most

7    of your benefit, then that's a different matter.

8         How old is the child, the youngest child?  Refresh my

9    memory.

10             THE DEFENDANT:  Thirteen, Your Honor.

11             THE COURT:  So you have another five years of

12   support for her.

13        So let's find out the answer to those questions, Mr.

14   Lazarus, and then we will put up a final order either

15   granting the government's request or denying it subject to

16   the child support, all right.

17        Is that acceptable?

18             MR. LAZARUS:  Yes, Your Honor.  We'll do our

19   best.

20             THE COURT:  Mr. Richards, you have a right to an

21   appeal filed from the Court's sentence.  I'm sure Mr.

22   Lazarus will advise you.  We will put up an order setting

23   forth your offense.  You'll be provided the transcripts, all

24   the necessary papers.  We'll appoint an attorney for

25   purposes of the appeal.  We'll make certain that, again, you

1   have all that information.

2           And again, the other closing comment I would make,

3   sir, with all due respect, you have a serious problem, a

4   serious issue.  And hopefully at some point, again, you'll

5   be able to receive treatment.

6           I know there is a treatment program in the Bureau of

7   Prisons.  Unfortunately, that program, typically you don't

8   qualify until later on in the term of your sentence.

9           But hopefully you'll receive a very thorough

10  evaluation, and then a treatment plan can be put in place.

11          Thank you very much.

12                  MS. SKUTNIK:  Your Honor, two matters.

13                  THE COURT:  Yes.

14                  MS. SKUTNIK:  First is that the government would

15  move to dismiss Count 2 of the indictment.

16                  THE COURT:  It will be dismissed, Count 2.

17                  MS. SKUTNIK:  And the second request I have of

18  the Court, the Court asked the *Bostic* question and counsel

19  responded.  He objected to the length of the sentence, which

20  I do not believe is stated with any particular specificity

21  as to what it is that he's objecting to.

22          So I would ask the Court if Mr. Lazarus could be asked

23  to articulate what it is that he's objecting to since he

24  does have an appellate right in this case.

25                  THE COURT:  Is there something more specific you

1    would like to add for the record, sir?

2              MR. LAZARUS:  We just believe in consideration of

3    all the 3553(a) factors, that a more significant variance

4    below 230 months is warranted.  We would ask the Court to

5    consider that under *Bostic*.

6              THE COURT:  All right.  I'll note for the record

7    that I've considered the argument.  I'll simply restate the

8    reasons I've already imposed the Court's sentence.

9         And, again, primarily as I've indicated, I've imposed

10   the 230, below the 240 statutory maximum.  I'll note for the

11   record the statutory maximum was the recommendation of the

12   probation staff.

13        I'll further note, just again to address the reasons

14   for the Court's sentence, the length, in the *Bostic* context,

15   is that, as I've indicated, it is very difficult for the

16   Court to vary down any significant extent based upon the

17   defendant's own self-admitted attraction to children.

18        And by his own admission "I'm sexually" -- I'm quoting

19   from his own statement -- "I'm sexually attracted to female

20   minors and female adults.  Pertaining to female minors, my

21   sexual preference is for girls between the ages of six to

22   twelve years old."

23        And then go on, again, to review the earlier

24   statements of the defendant, with his history of attraction

25   to children, and his prior history, his prior GSI, and all

1  the other matters is what, again, outside of the guidelines,

2  makes a downward variance further than the ten months I've

3  granted, at least in my view, not warranted.

4      And so I understand that.  I make those statements,

5  and again, I refer to the statement of the defendant in this

6  report of Homeland Security.

7      Thank you very much, counsel.  We appreciate your

8  courtesy.

9      Let us know, Mr. Lazarus, about the information

10  regarding the additional $5,000.

11      (Proceedings concluded at 4:20 p.m.)

12

13              C E R T I F I C A T E

14

15          I certify that the forgoing is a correct

16  transcript from the record of proceedings in the

17  above-entitled matter.

18

19          S/Caroline Mahnke            5/7/2019

20          Caroline Mahnke, RMR, CRR, CRC    Date

21

22

23

24

25